## STATE OF CONNECTICUT *v.* HENRY G. ROBINSON
## (AC 31023)

Gruendel, Beach and Sullivan, Js.

1

2

Argued November 19, 2010—officially released March 1, 2011

*Elizabeth M. Inkster,* senior assistant public defender, with whom was *Andrea Finan,* certified legal intern, for the appellant (defendant).

*Nancy L. Walker*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Donna Mambrino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Henry G. Robinson, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), threatening in the second degree in violation of General Statutes § 53a-62 (a) (1) and interfering with an officer in violation of General Statutes § 53a-167a (a). On appeal, the defendant claims that (1) the state presented insufficient evidence that he completed a substantial step toward assaulting the contemplated victim and (2) certain comments made by the prosecutor during closing arguments were improper and deprived him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of October 21, 2006, the defendant and his wife, the victim in this case, Brenda Allen, began arguing at their home. Allen disapproved of the defendant drinking alcohol, and she believed he had been drinking that day. The argument escalated over the course of the evening, culminating with the defendant saying that he would "shut [Allen's] mouth up forever . . . ." Believing that he would kill her, Allen left the bedroom where they were arguing. The defendant followed her out of the bedroom and he went into the kitchen and unsuccessfully attempted to get a knife out of a butcher block in which knives were stored. Allen then saw him begin to open the drawer where loose knives were kept before she ran out of the house.

Once out of the house, Allen went to her neighbors' house and contacted her daughter, Turhanda Major.

Major and her boyfriend, Kevin Coleman, picked up Allen and drove to a gasoline station. Allen then remembered that she needed to retrieve her medication, so Major and Coleman accompanied her back to her home. They entered the home, a split-level raised ranch, and Allen went down a set of stairs into the family room to get her purse from a closet, while Major and Coleman waited on the landing by the door. Major heard the defendant say: "I'm going to . . . kill her," and then saw him appear at the top of the steps with a knife in one hand. Coleman yelled that the defendant had a knife, and Allen ran up the stairs to get to the door. When she got to the landing, she saw the defendant start down the stairs toward her, knife raised, before she again ran from the home. As Coleman pulled Allen and Major from the home, he turned around to see the defendant swing the knife.

After leaving the home, Allen, Major and Coleman went outside and called 911. The defendant entered his garage, turned a light on and raised the garage door. When the police arrived a short time later, the defendant was still in the garage. The defendant refused to comply with the responding officers' requests that he show his hands and lie down on the ground, and instead shouted profanities and became increasingly agitated. The police sent their dog in, and, although the defendant was striking it, the dog held the defendant until the police could handcuff him. Upon searching the defendant, the police did not find a knife on him or in the garage. When they searched the house, they found a three inch knife on the kitchen table.

The defendant was charged with one count of attempt to commit assault in the first degree, threatening in the second degree and interfering with an officer, as well as two counts of reckless endangerment in the first degree. The jury found him not guilty on the reckless endangerment charges but found him guilty on all of

the other charges. The court accepted the verdict and sentenced him to a total effective term of twelve years imprisonment. This appeal followed.

I

The defendant first claims that the state failed to present sufficient evidence that he committed a substantial step toward assaulting Allen. Specifically, the defendant claims that the state failed to prove physical proximity between him and Allen or that he actually used the knife presented by the state. The defendant also argues that because the witnesses had differing accounts as to his actions with the knife, the state's evidence was insufficient to prove a substantial step. We disagree.

The defendant's claim is governed by a well established two part test. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Ovechka*, 292 Conn. 533, 540–41, 975 A.2d 1 (2009).

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by

the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . [Finally] in responding to a claim of evidentiary insufficiency . . . we view all of the evidence, and the reasonable inferences drawable therefrom, in favor of the [trier's] verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 152–53, 976 A.2d 678 (2009).

"A conviction of attempt to commit assault in the first degree, in violation of §§ 53a-49 (a) (2) and 53a-59 (a) (1), requires proof of intentional conduct constituting a substantial step toward intentionally causing the victim serious physical injury by means of a dangerous instrument." *State* v. *Brooks*, 88 Conn. App. 204, 211–12, 868 A.2d 778, cert. denied, 273 Conn. 933, 873 A.2d 1001 (2005).

"Under . . . § 53a-49 (a), [a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . . Essentially, an attempt under § 53a-49 (a) is an act or omission done with the intent to commit some other crime. The rationale is that while a defendant may have failed in his purpose, his conduct is, however, criminally culpable, and if carried far enough along causes a sufficient risk of harm to be treated as a crime in and of itself." (Internal quotation marks omitted.) *State* v. *Cox*, 293 Conn. 234, 240–41, 977 A.2d 614 (2009).

"To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose. . . . This standard focuses on what the actor has already done and not what remains to be done. . . . The substantial step must be at least the start of a line of conduct which will lead naturally to the commission of a crime. . . . What constitutes a substantial step in any given case is a question of fact." (Citation omitted; internal quotation marks omitted.) *State* v. *Andrews*, 114 Conn. App. 738, 747, 971 A.2d 63, cert. denied, 293 Conn. 901, 975 A.2d 1277 (2009).

A

The defendant, citing *State* v. *Andrews*, supra, 114 Conn. App. 738, argues first that the state could not show that he came into close physical proximity with Allen. By contrast, in *Andrews*, the defendant drove an automobile toward a police officer and, although the automobile did not hit the officer, it made contact with the officer's service weapon. Id., 746. In that case, this court held that the evidence was sufficient to prove a substantial step. Id., 747–48.

The defendant, however, misconstrues the import of physical proximity in order to show a substantial step toward the commission of a crime. Nothing in our case law suggests that an assailant must obtain a particular physical proximity to an intended victim to have taken a substantial step toward committing an assault. Indeed, § 53a-49 (b) specifies several types of conduct that may constitute a substantial step under § 53a-49 (a) (2), most of which do not require any physical proximity between the defendant and the victim, such as lying in wait and following the contemplated victim.

In the present case, Allen, Major and Coleman all testified that the defendant held a knife and that he was advancing toward Allen. Though the defendant is correct that the verbal threats alone may not have been

sufficient to show a substantial step, the threats, in connection with holding the knife and advancing toward Allen, are sufficient evidence from which the jury reasonably could have concluded beyond a reasonable doubt that the defendant took a substantial step toward the commission of assault in the first degree.

## B

The defendant next argues that the state failed to prove that the knife that it offered as the weapon used in the attempted assault was the actual knife wielded by the defendant. Thus, the defendant claims that the state failed to prove the deadly weapon element of assault in the first degree. We disagree.

The defendant argues that the only evidence authenticating the state's claim that the knife in evidence was the same knife used in the assault came from Allen's testimony that the knife that the police found was the only one missing from the kitchen drawer. Even if we agree, however, that the state failed to prove that the knife it offered was the same knife wielded during the commission of the attempted assault, we cannot conclude that the state failed thereby to prove that the defendant used a deadly weapon.

The witnesses described the knife that the defendant used. Coleman testified that the blade of the knife was two and one-half to three inches long. The defendant has offered no argument in law or logic that a three inch knife cannot be a deadly weapon. Even if the state failed to introduce any knife at all, the jury reasonably could have concluded from Coleman's testimony that the knife the defendant used was a deadly weapon. See, e.g., *State* v. *Fleming*, 111 Conn. App. 337, 347–48, 958 A.2d 1271 (2008) (evidence sufficient to prove firearm had less than twelve inch barrel despite weapon not having been introduced into evidence), cert. denied, 290 Conn. 903, 962 A.2d 794 (2009).

## C

The defendant's final argument concerning the sufficiency of the evidence pertains to several inconsistencies in the testimony of the three eyewitnesses. The defendant asserts that because the state did not offer any evidence to resolve these inconsistencies, it failed to prove that he committed an attempted assault. We disagree.

The inconsistencies highlighted by the defendant concern where he was standing in relation to Allen as he was holding the knife. Allen testified that the defendant was leaning over the railing as he came down the stairs, descending about two to three stairs before she exited the house. Major testified that he came down three stairs, and Coleman testified that he "charged" all the way down the stairs just as they fled through the front door. The state agrees that there is some inconsistency in the testimony of the three witnesses but argues that it was the province of the jury to determine the credibility of the witnesses. The jury could choose which evidence to credit in making its findings as to the sequence of events leading to the witnesses' exit from the house. Furthermore, nothing in the testimony of the witnesses contradicted the basic facts, as highlighted in part I A of this opinion, that the defendant was holding a knife and advancing toward Allen after having threatened her life. It was reasonable for the jury to conclude that not only did the defendant make threats but that he put his words into action by picking up a knife and moving toward Allen, thereby taking a substantial step toward the commission of the assault.

## II

The second claim raised by the defendant concerns statements made by the state during closing arguments that the defendant claims were improper and deprived him of his right to a fair trial. The defendant cites two

comments as improper: (1) the state's argument as to what could have happened had the defendant succeeded in attacking Allen with the knife and (2) the state's argument as to the significance of the disparity in what the witnesses reported to the police and their testimony at trial. The defendant argues that in making these comments, the state improperly appealed to the emotions of the jury, discussed facts that were not in evidence and improperly bolstered the credibility of the witnesses. We disagree.

"Before addressing the merits of the defendant's argument, we begin with the applicable legal principles and standard of review. [A] claim of prosecutorial impropriety, even in the absence of an objection, has constitutional implications and requires a due process analysis under *State* v. *Williams*, 204 Conn. 523, 535–40, 529 A.2d 653 (1987). . . . [T]he touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in . . . *Williams* . . . . In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial. . . .

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . .

Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based [on] the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. . . .

"If we conclude that prosecutorial impropriety has occurred, we then must determine, by applying the six factors enumerated in *State* v. *Williams*, supra, 204 Conn. 540, whether the entire trial was so infected with unfairness so as to deprive the defendant of his due process right to a fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Weaving*, 125 Conn. App. 41, 46–47, 6 A.3d 203 (2010), cert. denied, 299 Conn. 929, 12 A.3d 569 (2011). Thus, if the statements were not improper, we do not need to consider the *Williams* factors.

A

The defendant first claims that the prosecutor made improper comments to appeal to the emotions of the jury and commented on facts that were not in evidence when she argued that "[h]ad that knife sunk into Brenda's torso, front or back, her neck, her arm, her leg, it could have hit any of her vital organs, and it could have hit a major artery. And absolutely it could have caused serious physical injury. . . . [I]f you take that blade and you ram it into somebody's torso, front or back, their neck, their arms, their legs, hit a vital organ, hit a major artery, it's going to cause some serious damage. If that knife is used to slash somebody's face, serious disfigurement is going to result."

It is undisputed that a prosecutor may not improperly appeal to the emotions of the jury; *State* v. *Long*, 293 Conn. 31, 54, 975 A.2d 660 (2009); but it is also well established that "as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Betancourt*, 106 Conn. App. 627, 638–39, 942 A.2d 557, cert. denied, 287 Conn. 910, 950 A.2d 1285 (2008).

The prosecutor's comments concerning the knife and its possible impact, had the defendant used it, were not improper. The argument asked the jury to draw a reasonable inference from the evidence as to what might have happened had the defendant struck the victim. The state had the burden of proving that the defendant intended to commit serious physical injury, so asking the jury to reasonably infer, based on the evidence, that he would have been successful in doing so with the knife that he was alleged to have used is a reasonable inference based on the evidence.[1]

The defendant also claims that the state relied on extraneous facts that were not in evidence when it referred to Allen leaving the house "for good." The defendant argues that the statement implies that the marriage had ended. We, however, agree with the state's argument that in the context in which the statement was made, wherein the prosecutor described the multiple times that evening that Allen had left the home to walk her dog and then returned, the prosecutor contrasted the last time Allen left the home that night, when she

---

[1] In part I of this opinion, the defendant argued that the state failed to prove that the knife offered into evidence had been the one he actually used. As we concluded, even if the state had not introduced the actual knife, the description of the knife given by Coleman constituted sufficient evidence from which the jury could have concluded that the defendant used a deadly weapon.

did not intend to return as she previously had. These comments accurately reflected the testimony Allen gave at trial and were, therefore, not improper.

B

The defendant finally claims that the prosecutor improperly bolstered the credibility of the state's witnesses when she claimed that it was "no big deal" that the testimony by the eyewitnesses did not match the statements they made to the police on the night of the incident. The state argues that the prosecutor's comments were proper rebuttal. We agree with the state.

In closing arguments, counsel for the defendant noted that the testimony at trial of the three eyewitnesses varied in some respects from the statements that they made to the police immediately following the incident. On rebuttal, the prosecutor stated that defense "counsel wants you to think that there's something sinister in the actions and the words of the witnesses . . . when they talk to the officer and when they get here on the [witness] stand and testify. . . . These are regular people who have just been traumatized. . . . They're just telling you what they know [about] what happened. It's no big deal. There's nothing sinister about this. It's absolutely, perfectly logical that when the state talks to their witnesses in preparation of a case, that the state asks them more details, and more details come out." Furthermore, the defendant noted that the police reports contained certain omissions, and the state responded by arguing that "[t]here's nothing unusual about the omissions . . . of the police officers in their police reports. It's perfectly logical for a police officer not to write every single detail."

It is well established that a prosecutor "is not permitted to vouch personally for the truth or veracity of the state's witnesses. . . . Such expressions of personal

opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Put another way, the prosecutor's opinion carries with it the imprimatur of the [state] and may induce the jury to trust the [state's] judgment rather than its own view of the evidence. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Citation omitted; internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 815, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010). Yet, a prosecutor may properly comment on credibility issues, particularly in response to issues raised by the defendant. *State* v. *Long*, supra, 293 Conn. 41–42.

The defendant argues that the present case is similar to *State* v. *Alexander*, 254 Conn. 290, 755 A.2d 868 (2000), in which the prosecutor improperly commented on the credibility of the child witness alleged to have been a victim of sexual abuse. In *Alexander*, "the prosecutor expressed her own opinion, both directly and indirectly, as to the credibility of the victim's testimony. The prosecutor implied that the victim testified truthfully because she is young and therefore honest. The summation further contended that no child would possibly make up a story regarding sexual abuse."[2] Id., 305.

By contrast to *Alexander*, in *State* v. *Long*, supra, 293 Conn. 37–42, the court analyzed the defendant's claim

---

[2] The challenged statements included the following: "[A] delay in reporting or inconsistencies has nothing to do with whether or not the victim is lying or telling the truth. . . . Just because we have a twelve year old victim, who was eight at the time the incident occurred, recalling what happened to her when she was eight and nine . . . doesn't mean we can't depend on her word. Because we should depend on her word. . . . [The victim] knew when she came to court she had to tell the truth. *And that's what she did.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Alexander*, supra, 254 Conn. 300–301.

that the state improperly commented on the credibility of the teenaged victim when the prosecutor discussed apparent discrepancies between the victim's statements to the police and her testimony at trial. The court held that the challenged statements "clearly were intended to rebut defense counsel's suggestion, made during cross-examination of [the victim], that [the victim's] testimony was not credible because she did not recall various details that she had provided in previous statements to the police." Id., 39–40. The prosecutor called on the common sense of the jurors by pointing out that a teenager, and particularly one who had undergone trauma, might not remember details from one and one-half years prior. The prosecutor asked the jury: "What would you expect, to hear every specific detail, or some things that have lapsed out of your memory?" (Internal quotation marks omitted.) Id., 40–41. The court concluded that "[t]he prosecutor merely was appealing to the jurors' common sense in offering an alternative explanation for the variations between [the victim's] recollection of the alleged assault . . . ten days after it allegedly occurred, and her recollection at trial . . . nearly one and one-half years later. The prosecutor's remarks suggested that the jurors should rely on their common sense and infer from these inconsistencies not that [the victim] had contrived the allegations but, rather, that it is normal for anyone experiencing a traumatic event . . . to be unsure about certain, less important details." Id., 42.

*Long* is dispositive of the present case because, unlike in *Alexander*, the prosecutor in this case did not express her personal opinion as to the credibility of the witnesses. Rather, she simply asked the jury to draw on its common sense regarding the likelihood that over time, one's memories of events might change and that slight discrepancies in a story would naturally occur. That was one reasonable inference that the jury could

have made about that discrepancy; indeed, it could have chosen to believe the defendant's reasoning for the discrepancy and discredited the testimony of the eye-witnesses. Further, as in *Long*, the prosecutor discussed the issue of credibility directly in response to the various challenges raised by the defendant concerning discrepancies in the witnesses' testimony and earlier statements to the police.

The defendant has failed to show that the state offered insufficient evidence to support a conviction of attempt to commit assault in the first degree, nor has the defendant shown that the prosecutor made any improper statements at trial.

The judgment is affirmed.

In this opinion the other judges concurred.