******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* IVAN G. S.*
(AC 34106)

Gruendel, Keller and Schaller, Js.

*Argued September 11—officially released December 16, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Kavanewsky, J.)

*Charles F. Willson*, assigned counsel, for the appellant (defendant).

*Emily D. Trudeau*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Cornelius P. Kelly*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Ivan G. S., appeals from the judgment of conviction, rendered following a jury trial, of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] On appeal, the defendant claims that (1) the trial court should have ordered a new trial due to the state's late disclosure of a police report, and (2) he was deprived of a fair trial due to prejudicial comments made by the prosecutor during closing argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. J and N, who are sisters, are the biological granddaughters of the defendant. The defendant engaged in sexual conduct with the two girls on more than one occasion in 2009 during overnight stays at his residence in Bridgeport. At the time of these occurrences, J and N were between the ages of six and eight years old.

On June 28, 2009, during a conversation with her grandmother at the girls' mother's home, N reported what had happened during her stays at the defendant's. The grandmother immediately told the girls' mother about the accusations. The mother then spoke with J and N together and they both stated that they were sexually abused by the defendant. Following this conversation, the mother called the police and took J and N to the hospital. Bridgeport police began to investigate shortly thereafter.

After the investigation concluded, the defendant was charged with two counts of aggravated sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of § 53-21 (a) (2). Following a four day trial, the defendant was convicted of two counts of risk of injury to a child in violation of § 53-21 (a) (2) and acquitted of both counts of aggravated sexual assault in the first degree.

Following trial, the defendant filed a motion for a new trial, which the court denied. The court thereafter sentenced the defendant to a total effective term of seventeen years of imprisonment, suspended after twelve years, followed by twenty years of probation on each count of the risk of injury to a child, to run concurrently. Additional facts will be set forth as necessary.

I

The defendant first claims that the court erred in denying his motion for a new trial. Specifically, the defendant argues that the state's late disclosure of a police report negatively impacted his trial preparation and warrants a new trial. The defendant contends that the report, which contained statements from J's and N's mother, casts doubt on the credibility of J and N

and, therefore, his cross-examination of their mother would have been different if the report had been disclosed earlier. We disagree.

The following additional facts are necessary for the resolution of the defendant's claim. On July 6, 2011, the day before closing arguments, the parties were made aware of a previously undiscovered police report.[2] The police report was originally produced by a first-responding officer, Officer Donald Bensey, and indicated that J's and N's mother did not initially believe that their grandfather molested them. Defense counsel and the prosecutor indicated that they believed that Officer Bensey did not create his own report, and instead only referred the case to the Department of Children and Families via a hotline.

Following an initial review of the police report, the state sought to admit it for evidentiary purposes to substantiate an alleged prior consistent statement. Defense counsel objected and argued that the burden to produce this document is imputed by law to the state and that, although he did not believe that the prosecutor purposely withheld the report, he was prejudiced in preparing for trial without this information. Specifically, defense counsel argued that, had the report been made available, his witness preparation and cross-examination approach would have been different. In addition to the objection, the defendant filed a written motion for a new trial on the same ground, which the court denied. On appeal, the defendant argues that he was prejudiced by the late disclosure, but only broadly states that his approach and preparation would have been different had the police report been disclosed earlier. He fails to articulate any specific ways in which his preparation would have been different.

"[A] motion for a new trial is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . [Moreover, this court] will not disturb a trial court's findings of fact in ruling on a motion for a new trial unless they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *State* v. *Bellamy*, 149 Conn. App. 665, 675–76, 89 A.3d 927, cert. granted on other grounds, 312 Conn. 914, 93 A.3d 597 (2014).

We begin by analyzing the standard set forth in *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and "its progeny, by which we determine whether the state's failure to disclose evidence has violated a defendant's constitutional rights. In [*Brady* v. *Maryland*, supra, 87], the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, the defendant must show that (1) the government sup-

pressed evidence, (2) the suppressed evidence was favorable to the defendant, and (3) it was material [either to guilt or punishment]." (Internal quotation marks omitted.) *State* v. *Thompson*, 81 Conn. App. 264, 277–78, 839 A.2d 622, cert. denied, 268 Conn. 915, 847 A.2d 312 (2004).

In *State* v. *Thompson*, supra, 81 Conn. App. 278, this court reiterated that "[e]vidence known to the defendant or his counsel, or that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady*." (Internal quotation marks omitted.) "Where there has been an initial disclosure of exculpatory evidence at trial, the appropriate standard to be applied is whether the disclosure came so late as to prevent the defendant from receiving a fair trial. . . . The defendant bears the burden of proving that he was prejudiced by the failure of the state to make the disclosure earlier." (Internal quotation marks omitted.) Id.

In consideration of the defendant's claim regarding trial strategy and cross-examination, we conclude that the substance of the information contained in the police interview of J's and N's mother was disclosed during trial and, therefore, not suppressed under *Brady*. Additionally, defense counsel noted on the record that he did not believe that the prosecutor purposefully withheld or suppressed the report, which further solidifies that the instant situation does not constitute a *Brady* violation. We also note that the defendant did not seek any remedial action when the report was discovered. As the state suggests, either a continuance or an opportunity to recall witnesses due to the newly discovered information could have been requested.

"There is no denial of due process if the disclosed material can be utilized effectively at trial, and the defendant bears the burden of proving that he has been prejudiced by the late disclosure." Id., 279. In the present case, the defendant argues that the information contained in the police report undermined the credibility of J and N as witnesses and states that his cross-examination of their mother would have been different based on the details within the report. The defendant fails to expound upon the underlying ways in which his approach would have been different and falls short of demonstrating any specificity with relation to prejudice. We find that the trial court's observations are well reasoned when it stated: "With respect to the police report, I do believe that defense counsel had an adequate opportunity, and essentially elicited much, if not all, of what was within the report from other witnesses. And I don't think that even had that report been available earlier, it would have changed the outcome of this trial. So, I don't believe there was any prejudice in the timing of its development or the timing in which counsel became aware of it."

After reviewing the record and the defendant's broad,

unsubstantiated claims of prejudice in this case, we conclude that his prior lack of information concerning the contents of Officer Bensey's report did not prejudice him or deprive him of a fair trial. "On this record, the defendant's claims of prejudice are purely speculative and cannot furnish a basis for the reversal of his conviction." (Internal quotation marks omitted.) *State* v. *Walker*, 214 Conn. 122, 128, 571 A.2d 686 (1990). Accordingly, the trial court did not abuse its discretion in denying his motion for a new trial.

## II

The defendant next argues that the prosecutor made improper comments throughout closing arguments.[3] Specifically, the defendant states that the prosecutor (A) improperly expressed his own opinion about the defendant's guilt, and (B) improperly appealed to the jury's emotions by placing them in the shoes of J and N. The state asserts that the prosecutor's comments were not improper and, even if they were improper, the defendant has failed to demonstrate harm so as to undermine the fairness of his trial. We conclude that the prosecutor's comments were not improper.

We begin by setting forth the applicable law regarding claims of prosecutorial impropriety. "In analyzing claims of prosecutorial impropriety, we engage in a two-step analytical process. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Albino*, 312 Conn. 763, 771, 97 A.3d 478 (2014). If conduct rises to the level of prosecutorial impropriety, a new trial is warranted only in the event that the defendant can show that the actions were so egregious that it deprived him of his constitutional right to a fair trial. *State* v. *Long*, 293 Conn. 31, 37, 975 A.2d 660 (2009).

The court bears in mind that prosecutors are public officials who seek impartial justice on behalf of the citizens of their respective jurisdictions. Prosecutors have "a heightened duty to avoid argument [or questioning] that strays from the evidence or diverts the jury's attention from the facts of the case." (Internal quotation marks omitted.) *State* v. *Medrano*, 308 Conn. 604, 612, 65 A.3d 503 (2013). Despite the necessary safeguards to limit improper argument, the court recognizes that "the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered . . . ." (Internal quotation marks omitted.) Id. With these principles in mind, we turn to an examination of the argument at issue.

## A

Expression of Personal Opinion

The defendant first claims that, during closing argument, the prosecutor improperly expressed his personal opinion regarding the defendant's guilt and his decision to testify. The defendant specifically points to the following passage: "The defendant had some choices. He had a choice not to testify but he did. He had a choice not to sexually assault these girls and, again, I leave that to you as to whether or not that occurred. But more importantly, he chose these witnesses in this case. He chose N and he chose J as witnesses. Perhaps he thought that they wouldn't be believed or that their story was so incredulous that no right-minded juror is going to convict here . . . ." The defendant argues that the prosecutor used "witness" as a proxy for "victim," indicating that he chose his victims and abused them. The defendant also contends that with these statements, the prosecutor improperly commented on the defendant's decision to testify.[4] The state counters that the prosecutor's language was consistent with Supreme Court precedent that cautions against using the word "victim" in criminal cases. See *State* v. *Warholic*, 278 Conn. 354, 369–70, 897 A.2d 569 (2006). We agree with the state.

While a prosecutor is not permitted to interject his own opinion generally, he must be permitted to speak to the cumulative evidence he has put forth during the course of trial. See *State* v. *Santiago*, 269 Conn. 726, 750–51, 850 A.2d 199 (2004). Likewise, "[w]e must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The state's attorney should not be put in the rhetorical straightjacket of always using the passive voice, or continually emphasizing that he is simply saying I submit to you that this is what the evidence shows, or the like." (Internal quotation marks omitted.) Id., 751.

Prohibitions on prosecutorial opinions stem from an attempt to avoid misleading the jury. Said another way: "[T]he prosecutor's opinion carries with it the imprimatur of the [state] and may induce the jury to trust the [state's] judgment rather than its own view of the evidence. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 583, 849 A.2d 626 (2004).

In the present case, we disagree with the defendant's claim that the prosecutor went beyond the bounds permitted by law in his closing argument. The prosecutor

is permitted to comment on the totality of the evidence and suppositions that stem therefrom during his closing argument and, in this instance, did not go beyond what is permitted. We are not persuaded that comments were an improper expression of the prosecutor's opinion about the defendant and decline to extend the implications of the word "victim" onto the word "witness," as used here.

B

Improper Appeals to the Jurors' Emotions,
Passions, and Prejudice

The defendant next claims that the prosecutor attempted to put the jurors in the shoes of J and N in closing argument when he stated: "[A]nd the fact of the matter is, both of them saw it happening to one another . . . . [B]ut the fact of the matter is, you have a ten and a nine year-old girl coming in here and testifying about things perhaps you and I would have some difficulty talking about with loved ones at home, and yet they came in here, reluctantly pointed their finger over at their grandfather and said yeah, he's the person that committed these horrendous acts." We disagree.

"It must be acknowledged that the line between comments that risk invoking the passions and prejudices of the jurors and those that are permissible rhetorical flourishes is not always easy to draw. The more closely the comments are connected to relevant facts disclosed by the evidence, however, the more likely they will be deemed permissible." *State* v. *Albino*, supra, 312 Conn. 773.

During trial, J and N both testified that they witnessed the defendant sexually abusing the other. J's and N's mother testified on two occasions that she did not speak with her daughters about the events underlying this conviction, because it is incredibly hard for her given the nature of the allegations against her father by her daughters. Review of the transcripts does not reveal any evidence to establish that the prosecutor was doing anything other than refuting challenges made by the defendant about J's and N's credibility. We determine that the prosecutor acted in accordance with Supreme Court precedent when he asked the jury to contemplate J's and N's testimony from their perspective, an adolescent family member of the defendant's, rather than a similarly situated adult. See *State* v. *Long*, supra, 293 Conn. 58.

Thus, we conclude that the remarks "both of them saw it happening to one another," and "you and I would have some difficulty talking about with loved ones at home, and yet they came in here reluctantly and pointed their finger over at their grandfather" were not improper, as they were factually accurate descriptions of the evidence that were not unduly provocative.

The judgment is affirmed.

In this opinion the other judges concurred.

\* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e; *State* v. *Jose G.*, 290 Conn. 331, 963 A.2d 42 (2009).

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[2] The transcript of the colloquy among counsel and the court provides in relevant part:

"[Defense counsel]: Neither the State nor I knew of the existence of this report until a police officer's name comes up in the [Department of Children and Families (DCF)] report. So, this was not part of the disclosure . . . . It's imputed to the state that they know what's in the police files. There's a direct consequence—

"The Court: [W]hen did you first get this witness' [police] report?

"[Defense Counsel]: Today.

"The Court: Okay; but you're saying that it was referenced in the DCF report?

"[Defense Counsel]: The [police] report wasn't referenced in the DCF report; the police officer's name was referenced in the DCF report.

"The Court: Okay. Can I just hear a little more from the state on that, too?

"[The Prosecutor]: That's it, your honor. Obviously, there's an obligation upon the state to find all police reports. I was not aware of this. We were under the assumption that it was just a phone call that Officer Bensey made to the hotline in Middletown.

"The Court: Okay.

"[The Prosecutor]: Because there's no reference because in the DCF report, it says the caller . . . . It just references the caller and the caller spoke to the mother, the caller spoke to the children, and again, that caller is Officer Bensey."

[3] In addition to this claim, the defendant also argues that the trial was "marred with improper conduct." The defendant quotes two sections of the transcript that he argues demonstrate prosecutorial impropriety, but makes no argument as to the prejudice or problematic nature of these remarks. Instead, the defendant remarks that the prosecutor "holler[ed]" at and cut a defense witness off mid-response and cites commentary he claims was improper. The defendant failed to adequately brief, and thereby raise, issues pertaining to this commentary made at trial and, therefore, we do not reach the merits his claim regarding these comments.

[4] The claim was not briefed and, therefore, is deemed abandoned.