# STATE OF CONNECTICUT *v.* TYEHIMBA A. ADEYEMI
## (AC 30739)

Flynn, C. J., and Gruendel and McDonald, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 18, 2009—officially released June 22, 2010

*Heather M. Wood,* assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Gary W. Nicholson,* senior assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Tyehimba A. Adeyemi, appeals from the judgment of conviction, rendered after a jury trial, of accessory to murder in violation of General Statutes §§ 53a-54a and 53a-8, felony murder in violation of General Statutes § 53a-54c, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (3) and 53a-48, and attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (3).[1] On appeal, the defendant claims that (1) the trial court improperly admitted detailed evidence of his escape

[1] The defendant also was charged with burglary in the third degree in violation of General Statutes § 53a-103. The state withdrew that charge during trial.

following his arrest and (2) the state engaged in prosecutorial impropriety during cross-examinations and closing argument, thereby depriving him of his due process right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant had been a friend of the victim, Matthew Barrett, for about three months when the victim sold the defendant an automobile in early March, 2005. The victim was a car salesman at Best Buy Auto in New Haven. Sometime before May 5, 2005, the defendant and the victim had a falling out.

On May 5, 2005, the defendant met Craig Davis in a diner near the dealership, and they discussed robbing the victim, who sometimes carried a wallet containing money to buy automobiles at auctions. The defendant and Davis went to Best Buy Auto, where Davis repeatedly stabbed the victim with a box cutter and a knife and struck the victim's head with a shovel. The defendant also struck the victim's head with a fire extinguisher because the victim had called the defendant a sex offender.

Shortly thereafter, the victim's friend, Kraushon Clark, entered Best Buy Auto while simultaneously calling the victim's cellular telephone. After hearing voices and the victim's cellular telephone ringing in the garage, Clark knocked on the garage door. Davis opened the door wide enough for Clark to see the victim in a pool of blood on the floor. Davis then swung a shovel at Clark, who ran from the scene. As the defendant and Davis fled, the defendant picked up the victim's cellular telephone and dropped it while running in the Best Buy Auto parking lot.[2] The defendant and Davis ran until

---

[2] A forensic scientist with the state forensics laboratory performed DNA testing on the victim's cellular telephone and determined that the DNA on the cellular telephone and the cellular telephone holder was consistent with the defendant's DNA.

they reached the defendant's car. While they were driving, Davis paid the defendant $300 to satisfy a prior debt from the $1500 now in Davis' possession. When the police arrived at the scene, they did not find the victim's wallet or money.

When Davis and the defendant reached Davis' house, both of them changed their bloody clothing. After the crimes took place that morning, the defendant fled from Connecticut and did not return until May 25, 2005, a day before he gave a taped statement to the New Haven police. The defendant subsequently was arrested on June 30, 2005. Other facts will be discussed as they become relevant.

## I

The defendant first claims that the court improperly admitted prejudicial evidence concerning the details of his escape from the custody of the department of correction on July 6, 2005. The defendant argues that the admission of the details concerning his theft of clothing, bicycles and a garbage truck was irrelevant, prejudiced the jury and violated his federal constitutional right to a fair trial implicit in the fourteenth amendment to the United States constitution.[3] We disagree.

The following additional facts were presented at trial. On July 6, 2005, about two weeks after his arrest, while in the custody of the department of correction, the defendant escaped from Yale-New Haven Hospital where he was undergoing medical treatment. In a written statement to the state police after he was apprehended, the defendant stated that after he fled from the hospital, he ran through backyards, taking a red bicycle and some clothes off a clothes line. He rode

---

[3] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

the bicycle to a friend's house looking for help. Once he had showered and changed, his friend gave the defendant some money and drove him to the corner of Mansfield and Tilton Streets in New Haven. There, he tried to contact other friends but was unsuccessful. The defendant then stole another bicycle from Hazel Street in New Haven. When he reached Ella T. Grasso Boulevard in New Haven, he stole a garbage truck parked next to a dumpster. He drove the truck to Arthur Street and Lamberton Street, where he picked up prostitutes and drove them from New Haven to the Milford rest area on Interstate 95. Because the prostitutes had promised him money after they worked, he then waited for about an hour and drove the prostitutes back to Arthur Street. The prostitutes did not give him the money as promised, so he drove back to where he had stolen the truck. He left the truck and walked back toward West Haven, where he stole another bicycle and rode it to the West Haven beach. The next day, he sold the bicycle and walked back to New Haven. Finally, a day later, he turned himself in to the New Haven police department.

At trial, the defendant did not object to the admission of evidence concerning the escape itself, but he did object to the introduction of his written statement given to the state police when he turned himself in, concerning his theft of clothing, bicycles and the garbage truck. According to the defendant, such evidence was irrelevant and particularly prejudicial because it improperly allowed the jury to infer that because the defendant had a propensity to commit theft, he also had a propensity to participate in the brutal killing and robbery of the victim. The state countered that such evidence was relevant to show the defendant's state of mind, as the conduct was part of the defendant's escape from custody and showed that he desperately sought funds to flee from Connecticut. The court overruled the defendant's objection and allowed the state to introduce the

defendant's statement in its entirety. The court found that the evidence of this conduct was relevant and material to show the defendant's state of mind.

Generally, "[e]vidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person. . . . Nevertheless, Connecticut Code of Evidence § 4-5 (b) provides: Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . . The list of exceptions provided in the code of evidence is not exclusive but rather is intended to be illustrative." (Citations omitted; internal quotation marks omitted.) *State* v. *Damato*, 105 Conn. App. 335, 353, 937 A.2d 1232, cert. denied, 286 Conn. 920, 949 A.2d 481 (2008). Our Supreme Court has recognized state of mind as such an exception. *State* v. *Meehan*, 260 Conn. 372, 395–96, 796 A.2d 1191 (2002).

"To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, [the court has] adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . .

"[An appellate court's] standard of review on such matters is well established. The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest

or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Damato*, supra, 105 Conn. App. 353–54. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) Id., 352. "In [*State* v. *Sawyer*, 279 Conn. 331, 357, 904 A.2d 101 (2006) (en banc)], our Supreme Court explained that a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Davis*, 98 Conn. App. 608, 628, 911 A.2d 753 (2006), aff'd, 286 Conn. 17, 942 A.2d 373 (2008).

In this case, the state offered evidence of the defendant's theft of clothing, bicycles and a garbage truck, following his escape from custody, for the purpose of establishing consciousness of guilt. Although the court and the parties never expressly used the term "consciousness of guilt" at trial, we recognize it to be synonymous with "state of mind." Our Supreme Court has recognized that evidence of uncharged misconduct is admissible when the evidence is offered to prove the defendant's state of mind. *State* v. *Meehan*, supra, 260 Conn. 395–96.

This court has observed that "consciousness of guilt [evidence] goes to the question of the defendant's state of mind, a determination which in turn requires an assessment of the defendant's motivations . . . . In seeking to introduce evidence of a defendant's consciousness of guilt, [i]t is relevant to show the conduct of an accused . . . as well as any statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 98 Conn. App. 628.

We conclude that the court did not abuse its discretion in admitting into evidence the defendant's written statement concerning his theft of clothing, bicycles and a garbage truck. The evidence of the defendant's uncharged misconduct was not introduced for the purpose of demonstrating that because the defendant had committed other criminal offenses, it was likely that he had committed the crimes with which he had been charged. Rather, it was offered as consciousness of guilt evidence. Our Supreme Court has stated: "The state of mind which is characterized as guilty consciousness or consciousness of guilt is strong evidence that the person is indeed guilty . . . and under proper safeguards . . . is admissible evidence against an accused." (Citation omitted; internal quotation marks omitted.) *State* v. *Burak*, 201 Conn. 517, 533, 518 A.2d 639 (1986).

The jury reasonably could have inferred that the defendant's escape and subsequent details of the escape indicated consciousness of guilt. This court has stated that "[a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Erhardt*, 90 Conn. App. 853, 861–62, 879 A.2d 561, cert. denied, 276 Conn. 906, 884 A.2d 1028 (2005). Here, the jury heard evidence of the defendant's escape and that the defendant conspired with Davis to rob the victim, robbed the victim and bludgeoned the victim's head with a fire extinguisher. In addition, the defendant's DNA was found on the victim's cellular telephone in the auto dealership parking lot, he drove himself and Davis away from the crime scene, his clothes were bloody and he received $300 from Davis

for a prior debt immediately after the incident. Following the incident, witnesses also testified that the defendant told them details regarding the robbery and murder before the defendant fled from Connecticut and remained out of state for approximately two weeks. Cellular telephone records also showed that the defendant and Davis called one another shortly thereafter. We, therefore, cannot conclude that the court abused its discretion when it determined that the probative value of the evidence of the theft of clothing, bicycles and a garbage truck as to the defendant's state of mind during his escape outweighed any prejudicial impact on the jury.

Also, the limiting instruction, given during the court's charge to the jury, minimized any unduly prejudicial impact.[4] See State v. Anderson, 86 Conn. App. 854, 870, 864 A.2d 35 (jury presumed to follow court's instructions absent clear evidence to contrary), cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005); see also State v. William C., 103 Conn. App. 508, 520, 930 A.2d 753 (jury presumed to have followed court's limiting instructions, which serve to lessen any prejudice from admission of prior misconduct evidence), cert. denied, 284 Conn. 928, 934 A.2d 244 (2007). Because the court properly weighed the evidence and gave a limiting instruction that reduced its prejudicial effect, we conclude that the court did not abuse its discretion by admitting evidence of theft of clothing, bicycles and a garbage truck and any prejudice to the defendant also was avoided.

---

[4] The court gave the following limiting instruction in relevant part: "Ladies and gentlemen, before we go any further with respect to that statement, you heard the statement that [the prosecutor] just read, and it contains some information concerning some thefts that [the defendant] mentioned in that particular statement, I believe two bicycles, some clothes and a truck. This evidence is not being offered, nor can it be considered by you to prove that [the defendant] has a propensity to commit criminal acts, but can only be used by you to show his conduct after his escape and before turning himself in insofar as that conduct may bear upon his state of mind."

## II

The defendant claims that the prosecutor's comments during cross-examination and closing and rebuttal arguments were improper and violated his constitutional right to a fair trial.[5] The defendant claims that the prosecutor improperly (1) expressed his personal opinion that the defendant was a liar, (2) vouched for the credibility of the state's witnesses and (3) expressed his personal opinion regarding the defendant's guilt or innocence. The state argues that the prosecutor's comments were not improper, and, even if they were improper, they did not prejudice the defendant, so as to deny the defendant his due process right to a fair trial. We conclude that the prosecutor's comments were not improper.

The defendant concedes that the prosecutorial impropriety claim is unpreserved. Our Supreme Court has explained that the determination in these circumstances must involve application of the specific factors articulated in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), regardless of whether the defendant objected to the prosecutor's conduct at trial.

"Accordingly, we engage in a two step analytical process when reviewing claims of prosecutorial [impropriety]. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper . . . .

"In the event we find that [impropriety] occurred, we must then determine the due process issue by applying the following *Williams* factors mandated by our

---

[5] See footnote 3 of this opinion.

Supreme Court: (1) the extent to which the [impropriety] was invited by defense conduct or argument; (2) the severity of the [impropriety]; (3) the frequency of the [impropriety]; (4) the centrality of the [impropriety] to the critical issues in the case; (5) the strength of the curative measures adopted; and (6) the strength of the state's case. . . . In addition, defense counsel's failure to object to one or more incidents of [impropriety] must be considered in determining whether and to what extent the [impropriety] contributed to depriving the defendant of a fair trial . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Holliday*, 85 Conn. App. 242, 258–59, 856 A.2d 1041 (2004), cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004).

## A

The defendant claims that the prosecutor impermissibly expressed his personal opinion to the jury regarding the defendant's credibility. In support of this argument, the defendant cites to numerous comments made during cross-examination and closing argument that he claims amounted to the prosecutor improperly characterizing the defendant as a liar. We disagree that the prosecutor's comments amounted to an expression of personal opinion.

This court has stated that "the degree to which a challenged statement is supported by the evidence is an important factor in determining the propriety of that statement. Therefore, although a prosecutor may not state his or her personal opinion concerning the credibility or truthfulness of a witness, a prosecutor may comment on the credibility or truthfulness of a witness as long as the comment is grounded in the evidence. . . .

"Furthermore, our Supreme Court has concluded that it is not improper for a prosecutor to argue that a witness is lying, provided that the jury reasonably could infer from the evidence admitted at trial that the witness

is lying. In *State* v. *Oehman*, 212 Conn. 325, 334, 562 A.2d 493 (1989), the court stated that [a]lthough such invective is wholly unprofessional and has no place in a Connecticut courtroom, we conclude that the comments by the prosecutor characterizing the defendant as a liar . . . were supported by the evidence . . . .

"Similarly, in *State* v. *Stevenson*, [269 Conn. 563, 584, 849 A.2d 626 (2004)], the court concluded that it was not improper for a prosecutor to state that the defendant's testimony was totally unbelievable. . . . The court reasoned that it was not improper because it was a comment on the evidence presented at trial, and it posited a reasonable inference that the jury itself could have drawn without access to the assistant state's attorney's personal knowledge of the case." (Citation omitted; internal quotation marks omitted.) *State* v. *Luther*, 114 Conn. App. 799, 815–16, 971 A.2d 781, cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009). In the instances cited by the defendant, the prosecutor's argument that the defendant was not telling the truth was supported by evidence from which the jury reasonably could have inferred that the defendant was lying. See id.

The defendant cites to two of the prosecutor's comments during cross-examination. With regard to the first comment,[6] during direct examination, the defendant

---

[6] During the cross-examination of the defendant, the following colloquy took place:

"[The Prosecutor]: Now, where does it say in the statement that you cut your hand?

"[The Defendant]: It doesn't say that in that statement.

"[The Prosecutor]: All right. Where does it say in the statement that you ever tried to help [the victim] during the course of this killing?

"[The Defendant]: When I tried to pick up the phone and I couldn't.

"[The Prosecutor]: So, does it say something about the phone in that statement?

"[The Defendant]: No, it doesn't.

"[The Prosecutor]: And it certainly doesn't say anything at all about your reference to getting between [Davis] and [the victim] during this fight, does it?

"[The Defendant]: No, it does not.

testified that he cut his hand while trying to separate Davis from the victim. On cross-examination, however, the defendant admitted that in his taped statement to the New Haven police, he never mentioned having cut his hand during the incident. With regard to the second comment,[7] when the prosecutor questioned the defendant about his role in the incident, there were inconsistencies between his statements to the New Haven police and his statements at trial. On cross-examination, the defendant claimed that he gave significantly more details of his involvement in the incident as the detectives continually questioned him than appeared in his statement.

The defendant cites to the prosecutor's following comments during closing argument. First, "[the defendant] was asked about that, did you make that call [to

"[The Prosecutor]: That statement is a lie, isn't it?

"[The Defendant]: No, that's not a lie.

"[The Prosecutor]: It's not a lie?"

[7] During the cross-examination of the defendant, the following colloquy took place:

"[The Prosecutor]: The reason why you [gave the police] different versions is because you simply are not telling the truth; isn't that true, sir?

"[The Defendant]: That is not true.

"[The Prosecutor]: In fact, you would lie to keep—you lied to the New Haven police in an attempt to stay out of jail, right?

"[The Defendant]: No.

"[The Prosecutor]: And that's what you are doing here this afternoon, isn't it?

"[The Defendant]: Not at all.

"[The Prosecutor]: Not at all?

"[The Defendant]: No.

"[The Prosecutor]: You do admit that you lied to the police, though, don't you?

"[The Defendant]: I didn't lie to the police, I didn't tell them all that I knew.

"[The Prosecutor]: So, that's not lying?

"[Defense Counsel]: Objection, Your Honor. It's argumentative, at this point.

"The Court: Sustained. . . .

"[The Prosecutor]: You don't consider that to be telling a lie, sir?

"[The Defendant]: No.

"The Court: Sustained."

Davis]? He denied it. He denied it on the witness stand, but the records are what they are, ladies and gentlemen. Telephone records are records. They are what they are. They show what they show. They don't lie, they are what they are. Why is he denying making that phone call? Because he knows that there is absolutely no innocent explanation that he can give for calling the sole alleged murderer in this case right after the murder takes place. Because if you believe [the defendant's] testimony on the [witness] stand yesterday, he really didn't want anything to do with . . . Davis after this." Second, "I'm in New York. That's a complete lie. If you don't believe it, all you have to do is look at state's exhibit number 125, and these are the cell phone records from [the defendant]. . . . Why are you going to lie about where you are? . . . That's why he lied. . . . And what happened after he lied . . . ." In this case, the telephone records revealed that the defendant did make a call to Davis following the murder and the defendant was, in fact, not in New York.

On the basis of the evidence, in the instances set forth previously, the jury reasonably could have inferred that the defendant was lying. See *State* v. *Luther*, supra, 114 Conn. App. 815–16. Accordingly, the prosecutor's arguments that the defendant was lying were permissible comments on the evidence and, therefore, were not improper.

## B

The defendant also challenges the propriety of the prosecutor's statements during rebuttal to the defendant's closing argument: "That's why he wasn't truthful with the police. Just ask yourselves, if he wasn't willing to tell the police the truth, why would he tell you?" The defendant argues that this was an improper statement of the prosecutor's personal opinion because the prosecutor improperly suggested that to find the defendant

not guilty, the jury had to find that the state's witnesses were lying. We disagree.

We recognize that "[a]s a general rule, prosecutors should not express their personal opinions about the guilt of the defendant, credibility of witnesses or evidence." *State* v. *Holliday,* supra, 85 Conn. App. 261. The prosecutor in this case, however, was not improperly suggesting that to acquit the defendant, the jury had to find the state's witnesses were lying.

The substance of the prosecutor's remarks is distinguishable from those remarks in *State* v. *Thompson,* 266 Conn. 440, 470, 832 A.2d 626 (2003), and *State* v. *Singh,* 259 Conn. 693, 705–706, 793 A.2d 226 (2002). In *Thompson,* the prosecutor stated: "For you to believe that the defendant is innocent, you must believe that . . . [the state's witnesses] are both lying. You must believe that when they got up on the stand and took that oath they committed perjury. . . . In *Singh,* the prosecutor stated: So everyone else lies. [The witnesses] all must be lying because you're supposed to believe this defendant . . . . Again, remember that if you buy the argument that [the witness] couldn't have done it, couldn't have seen what he says he saw, then you have to conclude that [he] lied." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago,* 269 Conn. 726, 743–44, 850 A.2d 199 (2004); id., 744 (concluding prosecutor's comments merely summarized defendant's position when he stated: "[D]id Michael Ibscher lie? Did all these witnesses get together and lie? The police lied? *That's what they want us to believe.*" [Emphasis in original; internal quotation marks omitted.]).

Our review of the transcript in the present case reveals that the prosecutor's comments do not rise to the level of those comments made in *Singh.* Instead,

the prosecutor's first comment had an evidentiary basis[8] and the prosecutor's second comment merely was marshaling the evidence. See id., 743–44 (when comments with evidentiary basis examined in context, it was clear prosecutor marshaling evidence presented at trial). Accordingly, we conclude that these comments during closing argument were not improper.

## C

The defendant argues that the prosecutor made improper statements of personal opinion during rebuttal argument regarding the defendant's guilt or innocence. We disagree.

The defendant cites to two statements made during the state's closing argument. First, the defendant points to the following: "The only thing that he was doing was, he was getting out of state because he didn't want to . . . be questioned by the New Haven police. He needed some time, he needed some time to get his story together; that's why he fled the state. Are those the acts, is that the conduct of someone who is truly innocent?" The defendant argues that the prosecutor's comment improperly expressed his opinion regarding the defendant's guilt or innocence, which is a determination that should be left to the jury.

In this case, the prosecutor's comment was based on the evidence presented at trial, such as the defendant's flight from Connecticut immediately following the murder and his return approximately two weeks later. Because the jury reasonably could have inferred that those acts did not reflect the "conduct of someone who [was] truly innocent," we conclude that the prosecutor's comment was not improper. *State* v. *Luther*, supra, 114 Conn. App. 815–16.

---

[8] See parts II A and C of this opinion.

The defendant also refers to the prosecutor's following statement: "Keep in mind that, you know, [the defendant] has had the opportunity to hear all the evidence in this case before he testified . . . ." The defendant argues that the prosecutor's comment improperly expressed his opinion that the defendant had an opportunity to tailor his testimony because he was present during trial and heard all the evidence presented against him.

This court has explained: "In *Portuondo* v. *Agard*, [529 U.S. 61, 62, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000)], the United States Supreme Court squarely addressed the issue before us today, that is, whether it is consistent with due process for a prosecutor, during summation, to call the jury's attention to the fact that the defendant had the opportunity to hear all the other witnesses testify and had the ability to tailor his testimony accordingly. The court stated that it is natural and irresistible for a jury, in evaluating the relative credibility of a defendant who testifies last, to have in mind and weigh in the balance the fact that he heard the testimony of all those who preceded him. . . . In concluding that the comments were proper, the [United States Supreme Court] held: Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate—and indeed, given the inability to sequester the defendant, sometimes essential—to the central function of the trial, which is to discover the truth. . . . Similarly, in *State* v. *Alexander*, [254 Conn. 290, 299–300, 755 A.2d 868 (2000)], our Supreme Court concluded that a prosecutor's comments during closing argument were not improper when [the prosecutor] stated that the defendant had the opportunity to observe the testimony of all the witnesses, consequently enabling him to tailor his testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Perez*, 78 Conn. App.

610, 628–29, 828 A.2d 626 (2003), cert. denied, 271 Conn. 901, 859 A.2d 565 (2004). In this case, the prosecutor's statement during closing argument that suggested that the defendant had an opportunity to tailor his testimony because he was present during trial and heard the state's evidence against him was not improper. See id.

We conclude that the prosecutor's conduct was not improper. Accordingly, we need not address the *Williams* factors required in the second step of our review.

The judgment is affirmed.

In this opinion GRUENDEL, J., concurred.

FLYNN, C. J., concurring. I concur in the opinion and the result reached because of the strength of the state's case against the defendant, Tyehimba A. Adeyemi, and agree that with respect to prosecutorial closing argument we are constrained by Supreme Court precedents. I write separately because my sense of justice is offended when either defense counsel or a prosecutor characterizes the testimony of a witness or a defendant who takes the witness stand as a lie.[1]

In addressing the records of a cellular telephone call made from a telephone owned by the defendant, the prosecutor implied that the defendant was a liar. In referencing the defendant's testimony about another cellular telephone call that he made to his wife concerning his whereabouts, the prosecutor stated: "That's a complete lie." Later, in addressing different things that the defendant told his wife and the police, the prosecutor argued that "he wasn't truthful . . . ."

---

[1] In referring to a statement the defendant made to the police, the prosecutor during cross-examination stated: "That statement is a lie, isn't it?" Later in the cross-examination, the prosecutor asked the defendant: "The reason why you gave [the police] different versions is because you simply aren't telling the truth; isn't that true, sir?"

First, credibility is a jury determination. Such expressions of personal opinion by lawyers intrude on the jury's function. Second, rule 3.4 of the Rules of Professional Conduct specifically states that "[a] lawyer shall not . . . (5) state a personal opinion as to . . . the credibility of a witness . . . ." Final arguments that do so violate the plain language of this rule. Final arguments are only made in trials. All trials consist of testimonial or physical evidence or both. Excusing a violation of such a rule when there is some evidence in a case on which to base this eviscerates the rule.

Third, American Bar Association, Standards for Criminal Justice: Prosecution and Defense Function (3d Ed. 1993), prohibit this. Standard 3-5.2, titled "Courtroom Professionalism," requires that "[a]s an officer of the court, the prosecutor should support . . . the dignity of the trial courtroom by strict adherence to codes of professionalism . . . ." Id., standard 3-5.2 (a). Although standard 3-5.8, titled "Argument to the Jury," authorizes a prosecutor "[i]n closing argument to the jury" to argue "all reasonable inferences from evidence in the record"; id., standard 3-5.8 (a); subsection (b) of these same standards specifically states that "[t]he prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence . . . ." Id., standard 3-5.8 (b).

Finally, there may be reasons why a witness' testimony is mistaken that relate to his or her lack of ability to remember events and to relate them back at trial truly and accurately. The jury makes the decision whether a witness is simply mistaken or lying.

When our courts of law do not require compliance with professional rules of conduct and accepted national standards of attorney conduct, public trust and confidence in the judicial system inevitably suffers.