******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* ANTOINE WALTON
## (AC 38588)

Keller, Prescott and Flynn, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of robbery in the first degree, larceny in the second degree and assault on an elderly person in the third degree, the defendant appealed to this court. The defendant's conviction stemmed from an incident in which he robbed the victim of her purse in a store parking lot. The victim and two eyewitnesses gave statements to the police at the scene and later to detectives at the police station. During his closing argument to the jury, defense counsel suggested that the investigating detectives had conformed the statements given by the witnesses at the police station to make them consistent with respect to the witnesses' description of the defendant. In response, the prosecutor argued in his rebuttal closing argument that, if the detectives had wanted to fabricate evidence and to testify falsely, they could have done so in a manner more favorable to the state by stating that the defendant had told them that he had committed the subject crimes. On appeal, the defendant claims that the prosecutor's comments constituted improper vouching and misstatements of the law because they created the false impression that there was nothing to impede the detectives, other than their own honesty, from testifying falsely, when substantial legal hurdles, such as the defendant's fifth amendment right against self-incrimination, precluded the detectives from fabricating their testimony. *Held* that, in light of binding precedent arising out of similar facts, the prosecutor's comments were not improper nor did they misstate the law, as a prosecutor may appeal to the common sense of jurors by arguing that a witness could have told a more damning lie than the witness testified to at trial, and the comments here were a proper request for the jurors to use their common sense and to draw reasonable inferences from the evidence in assessing the credibility of the detectives; moreover, the prosecutor's hypothetical embraced a plethora of scenarios in which the fifth amendment was not implicated, and, therefore, the amendment was not a barrier to the detectives' ability to fabricate a more inculpatory confession by the defendant at trial.

Argued May 18—officially released August 22, 2017

*Procedural History*

Substitute information charging the defendant with the crimes of robbery in the first degree, larceny in the second degree, and assault on an elderly person in the third degree, brought to the Superior Court in the judicial district of Waterbury and tried to the jury before *Crawford, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, with whom, on the brief, was *James P. Sexton*, assigned counsel, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Don E. Therkildsen*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Antoine Walton, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), larceny in the second degree in violation of General Statutes § 53a-123 (a) (3), and assault on an elderly person in the third degree in violation of General Statutes § 53a-61a (a). On appeal, the defendant claims for the first time that the prosecutor engaged in impropriety and misstated the law during rebuttal closing argument when he argued to the jury that, had the investigating detectives wanted to fabricate evidence, they would have done so in a manner that was more favorable to the state's case. The prosecutor made these remarks in response to the defendant's suggestion during his closing argument that certain detectives had conformed witness statements concerning the height, footwear and other identifying characteristics of the defendant to make them consistent. We conclude that because binding precedent arising out of similar facts controls, in light of it, the defendant has failed to show that the prosecutor's remarks were improper. We agree with the state that the prosecutor did not misstate the law, because he did not make a statement of the law, at all, and we accordingly affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are pertinent to this appeal. On January 12, 2013, the defendant snatched the purse of the victim, Mary Cardella, as she was walking into the Rite Aid store on Fairfield Avenue in Waterbury, knocking her down in the process. The store manager, Jason Simpson, went outside to assist the victm, but stopped short of the altercation when the defendant threatened to shoot him. After taking the purse, the defendant then ran off behind Rite Aid. Maureen Giordano, who had witnessed the incident, began following the defendant until he threatened to shoot her. Simpson also followed the defendant, and saw him enter building eight of 222 Fairfield Avenue, an apartment complex directly behind Rite Aid.

Police arrived on the scene and took statements from Cardella, Simpson and Giordano. At the same time, a state police K-9 officer tracked the defendant from the scene of the incident to the lower level of building eight of 222 Fairfield Avenue, where there was a single apartment. Waterbury Police obtained consent to search the apartment from its occupant, the defendant's girlfriend. Inside, they found the defendant's state identification card.

Cardella, Simpson and Giordano later gave statements at the police department. Both Cardella and Simpson positively identified the defendant as the robber in photographic arrays that detectives prepared.

Meanwhile, the defendant's girlfriend alerted him to the search and that the police were looking for him. Thereafter, the defendant voluntarily went to the police station where he was arrested.

The defendant was charged with robbery in the first degree, larceny in the second degree and assault on an elderly person in the third degree. During closing arguments at trial, defense counsel stated: "In [Giordano's] 911 call, she gave a physical description . . . of a tall, black male, black hat, brown, suede jacket and blue jeans . . . and work boots. . . . Now, forty minutes later she reports to the Waterbury Police Department and that physical description changes . . . to black male with a black hoodie. . . . Now, this black hoodie and the physical description are only consistent when these witnesses get to the police department and their statements are typed up by [the detectives]. Their description on the scene is totally different than what is eventually written on that paper and that they signed at the end of the day. How does she go from black hat, brown suede jacket, very specific, blue jeans and work boots to just a black hoodie? And the answer is, those same two detectives . . . .

"Now, is this a coincidence that all these physical descriptions given on the scene are then changed to be consistent in the police department? They're changed to be consistent with the physical description of [the defendant]. The first description they give on the scene doesn't match [the defendant], but they made sure that by the time they got to that police station that physical description described [the defendant].

"Jason Simpson's 6 foot 4, 175 pound black male with black jeans, black hoodie and black sneakers on the scene becomes a brown skinned black male around 30 [years old] with a medium build at 6 feet tall.

"Maureen Giordano's . . . tall, black male, black hat, brown suede jacket, blue jeans and work boots becomes a dark skinned black male about 30 years old, medium build, around 6 feet wearing a black hoodie.

"Once again, totally different description given on the scene made consistent at the police department by . . . the detectives.

"Mary Cardella's testimony, by the way, not surprisingly, in her statement, also taken by [the detectives], black hoodie, 6 feet tall. Consistent with the other two witnesses whose description was changed."

In response to this argument, the prosecutor stated in his rebuttal: "Now, if [the detectives] had this grand conspiracy and they want to put all this in these statements all they have to do is sit up there when they testify and say, hey, [the defendant] was at the police department, he told me he did it. If they want to lie to you, there's a good lie. Why wouldn't they do that? Think about that when you judge [their] credibility. All

they have to do is sit there and say, he told me he did it." Defense counsel did not object to this statement.

The jury returned a verdict of guilty on all counts. The court imposed a sentence of eighteen years imprisonment, execution suspended after twelve years, followed by five years of probation. This appeal followed.

On appeal, the defendant claims that the prosecutor engaged in impropriety and misstated the law during rebuttal closing argument when he argued to the jury that, had the investigating detectives wanted to fabricate evidence, they would have done so in a manner that was more favorable to the state's case. The prosecutor made these remarks in response to the defendant's suggestion during his closing argument that certain detectives had conformed witness statements concerning the height, footwear and other identifying characteristics of the defendant to make them consistent. The defendant asserts that the remarks were improper vouching and misstatements of the law because they created the false impression that "there was nothing stopping the detectives, other than their own honesty, from testifying that 'he told me he did it,' " when in fact "substantial legal hurdles," such as the defendant's fifth amendment rights against self-incrimination, precluded the detectives from fabricating such testimony. We disagree.

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 572, 849 A.2d 646 (2004).

"[I]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Citations omitted; internal quotation marks omitted.) Id., 583. "Furthermore, prosecutors are not permitted to misstate the law. . . . [W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . ." (Internal quotation marks omitted.) *State* v. *Otto*, 305 Conn. 51, 77, 43 A.3d 629 (2012).

Turning to the present case, we conclude that the prosecutor's remarks during rebuttal argument do not constitute an impropriety. Prosecutors may appeal to the common sense of jurors by arguing that a witness could have told a more damning lie than she testified to at trial. See *State* v. *Long*, 293 Conn. 31, 46–47, 975 A.2d 660 (2009). In *Long*, the defendant was convicted based on allegations that he had touched the victim inappropriately. See id., 33–35. During closing arguments, the prosecutor stated: "If you are going to make something up, why not just say he went all the way to sexual intercourse? He made me perform oral sex on him. He made me do this, he made me do that, he made me do this. . . . If you are going to lie, why not just keep on lying and lying and lying?" (Emphasis omitted; Internal quotation marks omitted.) Id., 46. Our Supreme Court found no prosecutorial impropriety, stating: "[T]his argument is a permissible appeal to the common sense of the jurors on the basis of the very limited and specific nature of [the victim's] accusations. It would be reasonable for the jurors to infer that, if [the victim] had a motive to lie due to her desire to harm the defendant, her accusations would be less specific and would involve more severe conduct. Of course, this is not the only reasonable inference that could be drawn from the nature of the allegations, but it is based on the evidence, and it would be reasonable for the jurors to draw such an inference." (Emphasis omitted.) Id., 46–47.

Likewise, our Supreme Court has determined that a prosecutor's remark that a witness who chose to lie would have told a better lie is not improper vouching. See *State* v. *Ciullo*, 314 Conn. 28, 42–43, 100 A.3d 779 (2014). In *Ciullo*, the prosecutor stated: "Common sense tells us that there is not a conspiracy between [the witnesses] to give false testimony. If people wanted to conspire to give false testimony, they would have made up a little bit better of a story than that." (Internal quotation marks omitted.) Id., 42 n.12. Our Supreme Court held that a prosecutor's remark that if the witnesses were lying, the witnesses could have told a better lie did not "convey [the prosecutor's] personal opinion of the credibility of the witnesses; instead, the prosecutor's statements . . . are reasonable inferences the jury could have drawn from the evidence adduced at trial." (Emphasis omitted.) Id., 43.

Similar to the arguments at issue in *Long* and *Ciullo*, the prosecutor in the present case remarked: "[I]f [the detectives] had this grand conspiracy . . . [a]ll they have to do is . . . say, hey, [the defendant] was at the police department, he told me he did it. If they want to lie to you, there's a good lie." We discern no meaningful difference between the comments the prosecutor made here and those that our Supreme Court did not find improper in *Long* and *Ciullo*. Instead, the prosecutor's

remarks were a proper request for the jurors to use their common sense and draw reasonable inferences in assessing credibility.

We reject the defendant's attempts to distinguish *Long* and *Ciullo* from the present case on the ground that the witnesses here are police officers. Although our appellate courts have not addressed the question of whether a different rule applies to police officers, multiple federal courts of appeals have failed to make such a distinction. See *United States* v. *Garcia*, 758 F.3d 714, 723 (6th Cir. 2014), cert. denied,     U.S.   , 135 S. Ct. 498, 190 L. Ed. 2d 374 (2014); *United States* v. *Isler*, 429 F.3d 19, 28 (1st Cir. 2005), cert. denied sub nom. *Brown* v. *United States*, 547 U.S. 1022, 126 S. Ct. 1591, 164 L. Ed. 2d 303 (2006); *United States* v. *Wilkerson*, 411 F.3d 1, 8 (1st Cir. 2005); *United States* v. *Figueroa-Encarnacion*, 343 F.3d 23, 28–29 (1st Cir. 2003), cert. denied sub nom. *Medina* v. *United States*, 540 U.S. 1140, 124 S. Ct. 1130, 157 L. Ed. 2d 951 (2004). Although not stating a general rule, we do not believe any such distinction is warranted by the facts of this case.

The defendant, however, claims that the prosecutor's remarks misstated the law because they failed to explain that his fifth amendment right against self-incrimination, and not just the detectives' propensity to testify truthfully, could have precluded the admission of his confession. This precise argument is not addressed by any of the federal cases cited previously; however, the fifth amendment protections afforded by *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), only attach when an individual is both in custody and subject to interrogation. See *Rhode Island* v. *Innis*, 446 U.S. 291, 298–302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). Thus, the prosecutor's hypothetical embraced a plethora of scenarios in which the fifth amendment was not implicated and, thus, not a barrier to the detectives' ability to fabricate a more inculpatory confession at trial. Even though there are some scenarios in which the admission of such a confession may be suppressed on *Miranda* grounds, this mere possibility does not transform the prosecutor's otherwise proper appeal to the jurors' common sense into improper argument. Nor did it require listing of various hypothetical factual scenarios and legal hurdles pertinent to those facts that might impede admission of any inculpatory statements into evidence that the police might have fabricated.

We therefore conclude that *Long* and *Ciullo* foreclose the defendant's claim that the prosecutor's challenged remarks were improper. Because there was no impropriety, we do not address the defendant's claim of harm to his due process rights.

The judgment is affirmed.

In this opinion the other judges concurred.