******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* WILLIAM A. ARTIACO
(AC 40020)

DiPentima, C. J., and Bright and Flynn, Js.

*Syllabus*

Convicted of the crimes of sexual assault in the first degree and risk of injury to a child, the defendant appealed to this court. At trial, the defendant sought to have C testify as an expert witness. After C's voir dire, the trial court determined that he was not qualified as an expert on forensic interviews of child victims of sexual abuse and it excluded C's testimony as to whether the forensic interviews of the victim were conducted properly. On appeal, the defendant claimed that the trial court abused its discretion in precluding the testimony of C and that he was deprived of a fair trial due to prosecutorial impropriety during closing argument. *Held*:

1. The defendant's unpreserved evidentiary claim that the trial court abused its discretion in precluding the testimony of C was not reviewable, as the claim that the defendant presented on appeal before this court differed from the one raised before the trial court; during C's voir dire, defense counsel expressly stated before the trial court that his proffer was that C would comment on whether the forensic interviews of the victim were properly conducted, but the defendant raised a different claim on appeal, namely, that the trial court abused its discretion in precluding the testimony of C because he was well qualified to opine on inconsistencies in the victim's trial testimony and recorded interviews, and that his opinions could have been used to impeach the victim's credibility.

2. The defendant's claim that he was deprived of his due process right to a fair trial due to prosecutorial impropriety in closing argument was unavailing: contrary to the defendant's claim, the prosecutor did not argue to the jury that the defendant lied during his testimony and, although the prosecutor did state to the jury that the defendant possessed a motive to lie based on the seriousness of the charges and that the victim had no such motive to lie, it was permissible for the prosecutor to explain to the jury whether the witnesses had a motive to lie; moreover, the prosecutor did not improperly mischaracterize the evidence or shift the burden of proof to the defendant to disprove the state's witnesses when the prosecutor argued to the jury that the victim consistently had claimed that the defendant sexually assaulted her, including when she disclosed his action to two of her friends, as the two friends testified that the victim stated that the defendant molested her, and those witnesses used the verb molest synonymously with the phrase sexual assault in describing the defendant's conduct.

Argued March 5—officially released April 24, 2018

*Procedural History*

Substitute information, in the first case, charging the defendant with the crimes of sexual assault in the first degree and risk of injury to a child, and substitute information, in the second case, charging the defendant with the crimes of sexual assault in the first degree and risk of injury to a child, brought to the Superior Court in the judicial district of Windham, geographical area number eleven, where the cases were consolidated for trial; thereafter, the matter was tried to the jury before *Swords, J.*; verdicts of guilty; subsequently, the court denied the defendant's motion for a judgment of acquittal and the defendant's motion to set aside the verdicts and for a new trial, and rendered judgments in accordance with the verdicts, from which the defendant

appealed to this court. *Affirmed.*

*Robert J. McKay*, assigned counsel, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom were *Bonnie R. Bentley*, senior assistant state's attorney, and, on the brief, *Anne F. Mahoney*, state's attorney, and *Matthew Crockett*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, William A. Artiaco, appeals from the judgments of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that (1) the trial court abused its discretion in precluding the testimony of his expert witness and (2) he was deprived of a fair trial due to prosecutorial impropriety during closing argument. We disagree and, accordingly, affirm the judgments of conviction.

The state filed two substitute informations against the defendant, each charging him with one count of sexual assault in the first degree and risk of injury to a child. One information charged the defendant with committing the offenses in Putnam and the other with committing the offenses in East Windsor. Both substitute informations alleged that the criminal conduct occurred between 1998 and May 5, 2003, and that the victim was the same in both cases.[1] The defendant's trial commenced on June 1, 2011, and concluded on June 8, 2011, with convictions on all four counts.[2] Following his convictions, the court imposed a total effective sentence of twenty years incarceration and ten years of special parole.[3] This appeal followed.[4]

I

The defendant first claims that the court abused its discretion in precluding the testimony of his expert witness. Specifically, he argues that the court improperly determined that his expert witness, James Connolly, a psychologist and attorney, was not qualified "to be deemed an expert in child abuse in this matter, as he demonstrated to the trial court that [he] had a special skill or knowledge directly applicable to a matter in issue, that his skill or knowledge is not common to the average person, and that the testimony would be helpful to the court or jury in considering the issues."[5] Because the argument presented on appeal differs from the one raised before the trial court, we decline to review this issue.

The following additional facts are necessary. Following the conclusion of the state's case, the defendant sought to have Connolly testify as an expert witness. The state requested and received permission to voir dire Connolly regarding his qualifications to testify in the present case. Outside of the presence of the jury, defense counsel and the prosecutor questioned Connolly about his education and experience. During argument, defense counsel expressly stated that his "proffer is that [Connolly] will comment on whether or not the [forensic] interview [of the victim] was well conducted."[6] The state countered that he lacked the training, knowledge, experience and skill to assist the jury

in determining whether the forensic interviews of the victim had been conducted properly. The court determined that he was not qualified as an expert on forensic interviews of child victims of sexual abuse.[7]

On appeal, the defendant does not claim that the court erred in excluding Connolly's testimony as to whether the forensic interview of the victim was conducted properly. Instead, he now argues that Connolly was well qualified to opine on inconsistencies in the victim's trial testimony and recorded interviews and his opinions could have been used to impeach her credibility. This differs markedly from the proffer made at trial, where defense counsel sought to have Connolly review the propriety of the forensic interview techniques and protocols used for child sexual abuse victims.

The trial court's preclusion of Connolly as an expert witness is an evidentiary ruling. *State* v. *Campbell*, 149 Conn. App. 405, 425–27, 88 A.3d 1258, cert. denied, 312 Conn. 907, 93 A.3d 157 (2014). "Appellate review of evidentiary rulings is ordinarily limited to the specific legal [ground] raised by the objection of trial counsel. . . . To permit a party to raise a different ground on appeal than [that] raised during trial would amount to trial by ambuscade, unfair both to the trial court and to the opposing party." (Internal quotation marks omitted.) *State* v. *Bennett*, 324 Conn. 744, 761, 155 A.3d 188 (2017); see *State* v. *Holloway*, 117 Conn. App. 798, 813–14, 982 A.2d 231 (2009), cert. denied, 297 Conn. 925, 998 A.2d 1194 (2010); see generally *State* v. *Paul B.*, 143 Conn. App. 691, 700, 70 A.3d 1123 (2013) (assigning error to court's evidentiary ruling on basis of objections never raised at trial unfairly subjects court and opposing party to trial by ambush), aff'd, 315 Conn. 19, 105 A.3d 130 (2014); *State* v. *Scott C.*, 120 Conn. App. 26, 34, 990 A.2d 1252 (we consistently decline to review claims based on ground different from that raised in trial court), cert. denied, 297 Conn. 913, 995 A.2d 956 (2010). Accordingly, we decline to review this unpreserved evidentiary claim.[8]

## II

The defendant next claims that he was deprived of a fair trial due to prosecutorial impropriety in closing argument. Specifically, he argues that the prosecutor improperly stated to the jury during his closing argument that (1) the defendant had lied and that the victim lacked a motive to lie and (2) the victim had been consistent in her trial testimony and prior disclosure to her friends that the defendant had sexually assaulted her.[9] We conclude that the prosecutor's statements were not improper, and therefore this claim must fail.[10]

"Our jurisprudence concerning prosecutorial impropriety during closing argument is well established. [I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps

are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question. . . . [W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . .'' (Citation omitted; internal quotation marks omitted.) *State* v. *Thomas*, 177 Conn. App. 369, 405, 173 A.3d 430, cert. denied, 327 Conn. 985, 175 A.3d 43 (2017); see also *State* v. *Walton*, 175 Conn. App. 642, 647, 168 A.3d 652, cert. denied, 327 Conn. 970, 173 A.3d 390 (2017).

The defendant baldly asserts that the prosecutor argued to the jury that the defendant lied during his testimony. He offers no citation to the transcript to support this contention, and in our own review of the transcript we found no such statement by the prosecutor. The prosecutor did state to the jury that the defendant possessed a motive to lie based on the seriousness of the charges and that the victim had no such motive to lie. "It is permissible for a prosecutor to explain that a witness either has or does not have a motive to lie." *State* v. *Ancona*, 270 Conn. 568, 607, 854 A.2d 718 (2004), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005); *State* v. *Reddick*, 174 Conn. App. 536, 562, 166 A.3d 754, cert. denied, 327 Conn. 921, 171 A.3d 58 (2017), cert. denied,      U.S.    , 138 S. Ct. 1027, 200 L. Ed. 2d 285 (2018); see also *State* v. *Thompson*, 266 Conn. 440, 466, 832 A.2d 626 (2003) (prosecutor's comments regarding witness' motive to lie were proper); *State* v. *Carlos E.*, 158 Conn. App. 646, 664, 120 A.3d 1239 (permissible for state to make arguments regarding witness' credibility if based on reasonable inferences from evidence), cert. denied, 319 Conn. 909, 125 A.3d 199 (2015). We conclude, therefore, that the defendant has failed to demonstrate that the challenged comments constituted improper argument to the jury.

Finally, the defendant contends that the prosecutor improperly argued to the jury that the victim consistently had claimed that the defendant sexually assaulted her, including when she disclosed his action to two of her friends in the sixth and seventh grades. The defendant contends that these two friends testified that the victim had stated that she had been "molested" but that she had not used the phrase "sexually assaulted." We are not persuaded that the prosecutor improperly mischaracterized the evidence or shifted the burden of proof to the defendant to disprove the state's witnesses. Considering the context of the entire trial and the closing arguments; see *State* v. *Washington*, 155 Conn. App. 582, 606, 110 A.3d 493 (2015); we conclude that the

prosecutor's comments were not improper. During the trial, the witnesses used the verb "molest" synonymously with the phrase "sexual assault" in describing the defendant's conduct.[11] The challenged comments were based on the evidence at trial, and did not mischaracterize the evidence or shift the burden of proof to the defendant. See *State* v. *Betancourt*, 106 Conn. App. 627, 641, 942 A.2d 557 (asking jury to believe witness unless there is evidence to discredit that witness is proper and in no way shifts burden of proof), cert. denied, 287 Conn. 910, 950 A.2d 1285 (2008). Accordingly, we reject this argument.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] A detailed recitation of the underlying facts is unnecessary. For purposes of this appeal, we note that the victim testified that the defendant had engaged in sexual intercourse with her and had contact with her intimate parts multiple times, starting when she was in kindergarten. This criminal conduct occurred in various ways; see General Statutes § 53a-65 (2) and (8); and occurred in both Putnam and East Windsor.

[3] The jury specifically found in both cases that the victim was under ten years of age. See General Statutes § 53a-70 (b) (2).

[4] On June 21, 2013, we dismissed the defendant's appeal from the judgments of conviction "because no appellate brief was filed in accordance with [our] orders." *Artiaco* v. *Commissioner of Correction*, 180 Conn. App. 243, 244, A.3d (2018). The habeas court concluded that the defendant had been denied the effective assistance of appellate counsel, and restored his appellate case. Id., 244 n.1.

[5] During his voir dire, Connolly testified that he had received a doctorate in clinical psychology in 1978 and a juris doctor in 1998. In the course of his career, Connolly performed evaluations of the psychological status of individuals accused of sexually abusing children.

[6] The following colloquy occurred between the trial court and defense counsel:

"[Defense Counsel]: My proffer is that [Connolly] will comment on whether or not the interview was well conducted.

"The Court: All right. So it's limited to the techniques used in the interview; correct?

"[Defense Counsel]: Yes."

[7] Specifically, the court ruled: "Having listened to the testimony and also having reviewed the testimony during the brief recess, the court is unable to find that the witness' experience and/or training qualifies him as an expert *in the field of forensic interview techniques and protocols of child sexual abuse victims*.

"More specifically, the witness has no publications in the field. He has never attended a course in forensic interview techniques of child sexual abuse victims. He has never conducted a forensic interview of a child sexual abuse victim.

"*All of his evaluations*, of which he indicated were 400 in the field of sexual abuse, *were done of offenders*, *not of child abuse victims*. He has no board certifications that were testified to in any area of psychology. There is absolutely no evidence that he keeps up or reads the research and literature current in the field of child sexual abuse and/or forensic interview techniques of child sexual abuse victims.

"Although he testified he's an expert witness and has been an expert witness in Connecticut, there's no evidence that he has ever testified as an expert witness in the field of the evaluation of forensic interview techniques of child sexual abuse victims. And finally, there is nothing in the witness' educational background which would lead the court to believe that he has any expertise in this field.

"So for all of those reasons, the court is unable to find that [Connolly] should testify as an expert witness in this case *as proffered for the evaluation*

*of forensic interview techniques of child sexual abuse victims.*" (Emphasis added.)

[8] The defendant also requested that we review this claim pursuant to the *Golding* doctrine. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Unpreserved evidentiary claims, however, fail under the second prong of *Golding*. *State* v. *Stanley*, 161 Conn. App. 10, 28, 125 A.3d 1078 (2015), cert. denied, 320 Conn. 918, 131 A.3d 1154 (2016); *State* v. *Osbourne*, 138 Conn. App. 518, 538, 53 A.3d 284, cert. denied, 307 Conn. 937, 56 A.3d 716 (2012). Accordingly, we decline to review this claim under *Golding*.

[9] Specifically, the prosecutor argued: "You should evaluate [the victim's] testimony. And you'll be told how to when it comes down to credibility, and we'll discuss that in a little bit. To make no mistake, she has been consistent from her first interview, until the time she testified [on the first day of the defendant's trial], that [the defendant] was her abuser and it happened in kindergarten."

Subsequently, the prosecutor stated to the jury: "You have the fact, it's very important, that [the victim] has no motive to lie about these things; *that she's been consistent* from the first interview, *her discussions with her friends before that, all the way up to* [*the first day of trial*], *when she testified that the defendant sexually assaulted her and it happened in kindergarten.*" (Emphasis added.)

[10] Accordingly, we need not conduct an analysis of the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). See *State* v. *Adeyemi*, 122 Conn. App. 1, 18, 998 A.2d 211, cert. denied, 298 Conn. 914, 4 A.3d 833 (2010).

[11] "Molest" has been defined in relevant part as, "to force physical and [usually] sexual contact on," while the phrase "sexually assault" has been defined as "illegal sexual contact that [usually] involves force upon a person without consent or is inflicted upon a person who is incapable of giving consent . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003).

---